# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division



FILED
JUL 16 2024
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | No. 3:24-cr- 106 |
| v. | |
| | 18 U.S.C. § 1349 |
| PIA LAWSON, | Conspiracy to Commit Bank Fraud |
| | (Count 1) |
| *Defendant.* | |
| | 18 U.S.C. § 1957 |
| | Money Laundering |
| | (Counts 2 and 3) |
| | |
| | Forfeiture Allegation |

## INDICTMENT

July 2024 Term — At Richmond, Virginia.

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times material to this Indictment, unless otherwise stated:

1.      Defendant Pia LAWSON resided in Farmville, Virginia, within the Eastern District of Virginia.

2.      Victim Cooper Electrical Construction Company (hereafter "Cooper Electrical") was based in Greensboro, North Carolina, and in the business of providing electrical construction contracting services.

3.      Victim Summit Solutionz, Inc. (doing business and hereafter referenced as "Solutionz, Inc.") was based in California, maintained an office in Mecklenburg County, North Carolina, and was in the business of installing videoconferencing systems and related audio/visual

1

equipment. Under an agreement between the two businesses, Solutionz, Inc. performed subcontracting work for Cooper Electrical.

4.      On or about September 21, 2021, Cooper Electrical issued a check in the amount of $468,477.13 payable to "Solutionz" (hereafter, the "Check") for services and equipment that Solutionz, Inc. had rendered under the subcontractor agreement. Cooper Electrical placed the Check in the mail stream operated by the United States Postal Service in an envelope addressed to Solutionz, Inc.'s office in Mecklenburg County, North Carolina.

5.      In or about January 2022, Cooper Electrical reported to the Greensboro Police Department that the Check had been stolen from the mail and fraudulently deposited into an unknown account that was not controlled by Solutionz, Inc., the intended payee.

6.      At no point was LAWSON engaged in any commercial relationship with Cooper Electrical or Solutionz, Inc., or otherwise entitled to payment by either entity.

7.      Branch Banking & Trust (BB&T) and SunTrust Bank were each a "financial institution" as that term is defined at Title 18, United States Code, Section 20. In 2019, BB&T and SunTrust Bank completed a merger, with the resulting entity—also a "financial institution" as defined at 18 U.S.C. § 20—named Truist Bank. Truist Bank continued to operate certain branches and services under the SunTrust and BB&T names through the time period relevant to the conspiracy charged.

8.      Carter Bank & Trust was also a "financial institution" as that term is defined at Title 18, United States Code, Section 20.

## COUNT ONE
Conspiracy to Commit Bank Fraud

9. The preceding paragraphs are incorporated herein.

10. Between a date unknown, but believed to be no later than on or about September 27, 2021, and continuing through in or about November 2021, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant Pia LAWSON, did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, that is:

a. to knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud and obtain money, funds, and property owned and under the custody and control of financial institutions (as that term is defined in Title 18, United States Code, Section 20), including Truist Bank (formerly known as Branch Banking and Trust Company, and hereafter referred to as "BB&T"), by means of materially false and fraudulent pretenses and promises, in violation of Title 18, United States Code, Section 1344.

### *Object of the Conspiracy and Scheme and Artifice*

11. The object of the conspiracy and scheme and artifice to defraud was for LAWSON to unlawfully enrich herself by negotiating a stolen check to obtain funds to which she was not entitled, and to use those fraudulently obtained funds for her own purposes.

### *Ways, Manner, and Means*

12. It was part of the conspiracy and scheme and artifice that a member of the conspiracy unlawfully misappropriated the Check—which was issued by Cooper Electrical payable to "Solutionz" in the amount of $468,477.13—between on or about September 21, 2021 (when the Check was issued) and on or about September 27, 2021.

13.	On or about September 27, 2021, a member of the conspiracy caused a corporation to be incorporated in the state of Georgia called "The Solutionz GA, Inc." (hereafter "Solutionz GA"). Solutionz GA was a fictitious company created for the purpose of facilitating the scheme and artifice. Solutionz GA did not operate a legitimate business, and it had no legitimate dealings with Solutionz, Inc. or Cooper Electrical.

14.	LAWSON was named the "CEO" and "CFO" of Solutionz GA in documents filed with the Georgia Secretary of State on or about September 28, 2021.

15.	On or about September 28, 2021, defendant LAWSON opened a business checking account ending in 6907 (hereafter the "6907 Account") on behalf of Solutionz GA at a BB&T branch located in Farmville, Virginia. While opening the 6907 Account, LAWSON certified that she was the Chief Executive Officer and a beneficial owner of Solutionz GA.

16.	LAWSON and her co-conspirators created the fictitious Solutionz GA entity for the purpose of fraudulently claiming that Solutionz GA was the actual and legitimate payee of the stolen Check, which was payable to "Solutionz." The defendant and her co-conspirators took these steps knowing full well that Solutionz, Inc. was entitled to the proceeds of the Check, and that Solutionz GA was not.

17.	On or about September 30, 2021, the defendant negotiated the Check at the BB&T branch located at 1304 S. Main Street, Farmville, Virginia 23901, within the Eastern District of Virginia. The funds were withdrawn from Cooper Electrical's account at a different "financial institution," as defined at 18 U.S.C. § 20, and deposited into Solutionz GA's 6907 Account at BB&T.

18.	LAWSON presented the Check for deposit into the 6907 Account at the BB&T Farmville branch knowing that neither she nor her fictitious company, Solutionz GA, was entitled

4

to the proceeds. She did so with the intent to defraud the bank and with the intent to obtain money or funds owned or under the custody or control of the bank.

19.     The defendant depleted the fraudulently obtained $468,477.13 through a series of transactions and transfers between in or about October 2021 and in or about November 2021, at the end of which the 6907 Account had a balance of $0.

20.     Among those transactions and transfers, on or about October 12, 2021, LAWSON transferred $65,000 to her personal checking account, account number ending 7059 (hereafter, the 7059 Account), which was also held at BB&T.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO AND THREE
Money Laundering

21.     The preceding paragraphs are incorporated herein.

22.     On or about the dates set forth below, in the Eastern District of Virginia, and within the jurisdiction of this court, and elsewhere, defendant PIA LAWSON did knowingly engage and attempt to engage in monetary transactions (as that term is defined in Title 18, United States Code, Section 1957(f)(1)) in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity (that is, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, as set forth in Count One):

| Count | Date (on or about) | Monetary Transaction |
|---|---|---|
| 2 | October 12, 2021 | Online banking transfer from the BB&T 6907 Account of $65,000 to LAWSON's personal BB&T 7059 Account. |
| 3 | October 15, 2021 | Check drawn on LAWSON's BB&T 7059 Account in the amount of $30,000, written and negotiated to cash. |

(All in violation of Title 18, United States Code, Section 1957.)

# FORFEITURE ALLEGATION

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant is hereby notified that if convicted of the offense charged in Count One of this Information, she shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

The defendant is further notified that, upon conviction of any of the offenses listed in Counts Two and Three, she shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

Property subject to forfeiture includes, but is not limited to:

The sum of at least $468,477.13, which represents the amount of proceeds the defendant obtained from the offense of conviction, which sum shall be reduced to a money judgment against the defendant in favor of the United States.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(All in accordance with Title 18, United States Code, Sections 982(a)(1) and (2), and Title 21, United States Code, Section 853(p).)

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

<span style="color:red">Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office</span>

By: _____
Robert S. Day
Assistant United States Attorney

6